**METROPOLITAN CAS. INS. CO. OF NEW YORK v. MILLER et al.**

No. 10255.

United States Court of Appeals
Seventh Circuit.

May 11, 1951.

Jacob T. Pincus, Donald N. Clausen, Herbert W. Hirsh and Norman A. Miller, all of Chicago, Ill., for appellant.

James W. Kissel, Joseph Harrow, John T. Kennedy, all of Chicago, Ill., for appellees.

Kenneth F. Burgess, James E. S. Baker, Chicago, Ill., for Illinois Bell Tel. Co.

Before DUFFY, LINDLEY and SWAIM, Circuit Judges.

SWAIM, Circuit Judge.

This is an appeal from a judgment on a verdict in a declaratory judgment action. The plaintiff, The Metropolitan Casualty Insurance Company of New York, hereinafter referred to as "Metropolitan," sought a judgment that a policy of automobile insurance issued by it did not cover liability of defendant Miller at the time of an accident in which one Farlois was killed. The jury found for defendants, that there was a Metropolitan policy covering Miller at the time of the accident.

The principal contention of plaintiff on this appeal is that as a matter of law the policy issued by Metropolitan never was a valid policy and that this should have been decided by the trial judge, either on motion for a directed verdict or on motion for judgment notwithstanding the verdict.

The facts appear to be that on July 21, 1948, Miller bought a used car from Mr. Brennan. Miller then authorized Brennan to procure liability insurance on this car. The desire of both Miller and Brennan was to have such insurance effective from the time Miller drove the car away from Brennan's place of business. Some time later Miller did receive a policy of insurance from the New York Casualty Co., which insurance was procured for him, on the order of Brennan, by the finance company through which he was financing the purchase of his car. This policy covered him only from July 26. Later he also received by mail a policy issued by Metropolitan which covered him from July 20. This latter policy is the policy in dispute. He did not receive this policy until August 13 or 14, four or five days after the accident. With the Metropolitan policy he also received a statement for the amount of the premium for the first year.

It is undisputed that the Metropolitan policy was ordered from Metropolitan by the Reliance Insurance Agency, hereinafter referred to as "Reliance," an agent of Metropolitan, and was placed with Reliance by one of its brokers, Mr. Hannah, who died before the trial. Hannah did frequent business with Brennan, who testified that he liked to give insurance business to Hannah when he could. In November 1948 Reliance paid Metropolitan for the Miller policy.

After the accident Mr. Miller attempted to cancel both of his insurance policies and to get a rebate of any premiums to which he might be entitled. He sent his Metropolitan policy back to Reliance where it was treated as being "cancelled flat," that is, repudiated from the beginning. How-

ever, Metropolitan did not so treat it upon its "daily" kept as to each policy, but rather treated it as uncancelled. Twice Metropolitan billed Reliance for the premium (its procedure was to collect premiums from Reliance and expect Reliance to collect from the insureds) and actually received payment of such premium from Reliance in November 1948. An employee of Reliance testified that she paid the premium on this policy "inadvertently." Approximately a year later, on advice of counsel, Metropolitan returned this premium to Reliance.

The factual dispute centers primarily around whether Miller's agent, Brennan, ordered Hannah to procure insurance for Miller. If Brennan ordered such insurance from Hannah the Metropolitan's acceptance of the application constituted a binding contract. If Metropolitan received an authorized application through Hannah and Reliance for insurance for Miller, it is conceded that Miller would have been covered by a Metropolitan binder pending Metropolitan's investigation of the risk. Another factual dispute concerns the extension of credit to Miller for the premium. It is undisputed that Miller never paid a premium, but this is immaterial if Reliance paid the premium to Metropolitan and extended credit to Miller for the premium.

There is no issue raised by Metropolitan on the meaning of Miller's attempted cancellation of the policy. Defendants explain his actions as meaning that he cancelled as of that time and wanted a pro rata rebate of any paid premiums. Plaintiff does not seriously challenge this position.

▮ Plaintiff's insistence that as a matter of law there was no valid policy here would require a holding that the jury's verdict is not supported by substantial evidence. The dispute here is not so much as to what constitutes a legally binding policy, but rather whether the evidence shows as a matter of law that these legal requirements have not been complied with. This is an action by Metropolitan to establish that there was never a valid policy. The burden was on plaintiff to prove its case.

Throughout the case Metropolitan based most of its argument on the supposed inability of defendants to show an order from Brennan to Hannah. They insist that there is no evidence on which the jury could base a finding that Brennan placed an order with Hannah, and, to the contrary, that there is evidence that he did not place such an order. It is necessary to make such a connection because neither Miller nor Brennan had any direct contact with Metropolitan or with Reliance. Both Miller and Brennan were vague on this insurance matter.

The evidence before the jury showed the following: Miller wanted insurance and told Brennan to see about it. Hannah dealt frequently with Brennan and Brennan liked to give insurance business to Hannah. Hannah placed an order for insurance for Miller with Reliance, having obtained all the necessary detailed information about Miller and his automobile, information which could only have been obtained from Brennan or from Brennan's records of the sale. As a result of the order placed by Hannah with Reliance the policy in question was issued to Miller by Metropolitan. A letter, dated September 14, 1948, from Metropolitan to Miller acknowledging notice of the accident reserved to Metropolitan all of its rights "under the terms of your policy." Metropolitan's "daily" on Miller's policy, made by Metropolitan for its files and introduced by Metropolitan as an exhibit, had been stamped "Unable to Renew" and "Dropped." Both of these exhibits would indicate that at that time Metropolitan thought it had issued a valid policy to Miller. Brennan testified that at the time he sold the car to Miller he suggested to Miller the advisability of procuring liability insurance and that Miller said, "Well, go ahead and see if you can get it for me." Brennan testified further as to his conversation with Hannah concerning this insurance, in part as follows:

"Q. * * * did you say anything to Roy Hannah about the insurance? A. I think I might have said something, to stand by.

*    *    *    *    *    *

"Q. Now, can you recall whether you said something any more definite than that? A. Well, I couldn't say positively * * *.

"Q. Now, did you talk, Mr. Brennan, to Roy Hannah, or did you not, about the insurance for Mr. Miller? A. Well, you see, my memory—I couldn't say definitely that I did; *but I think that I did*, because we used to keep him in reserve, *so I said something to him about getting this insurance*.

\*      \*      \*      \*      \*      \*

"Q. And, therefore, you told Roy Hannah about that didn't you? A. I imagine I did. I probably did.

\*      \*      \*      \*      \*      \*

Brennan then explained that he had some doubts about being able to procure liability insurance for Miller through the finance company.

"Q. Now, you told all of that to Hannah, didn't you, Mr. Brennan? A. Well, I don't think so at the time. You see, he used to come into the office there in the morning, and he would look over our orders. Now, I don't just know what the ordinary conversation would be.

\*      \*      \*      \*      \*      \*

On Cross exam:

"Q. Mr. Brennan, did you at any time give a firm or unconditional order to Mr. Hannah for a liability policy for Mr. Miller? A. No, I don't think that I ever did.

"Q. As a matter of fact, you know you did not, isn't that right? A. I could not have because, through the finance company, he would not pay for two policies.

\*      \*      \*      \*      \*      \*

On Re-direct:

"A. I would say, as soon as they O.K.'d —the finance company had O.K.'d the insurance, Hannah was out of it.

\*      \*      \*      \*      \*      \*

"Q. Well, did you tell Hannah anything, that they had O.K.'d it? A. I don't remember of it, no.

\*      \*      \*      \*      \*      \*

"Q. You just forgot about it from that time on, isn't that right? A. That is right."

Brennan also stated that the insurance was to be effective as of the date of the delivery of the car, July 21, 1948, and that Miller did not tell him not to get liability insurance unless it could be financed.

Obviously some of Brennan's testimony was contradictory. He had been engaged in selling used cars for years. It is understandable that he would not remember the details of one sale which had been made two years before. Without considering the contradictory testimony of Brennan, it was shown: Hannah dealt frequently with Brennan; Miller told Brennan to get him insurance; Hannah somehow procured the detailed information which seemingly could come only from Brennan or Miller; a policy was duly issued. Brennan's vague impression that he could not have ordered from Hannah because that would have left Miller with two policies does not necessarily destroy the inference to be drawn from these other facts, and the jury could well accept defendant's explanation that Brennan just forgot to cancel the order for one of the two policies.

The other propositions of law relied on by Metropolitan and discussed in appellant's brief are all based on the erroneous assumption that the record contains no evidence from which the jury could have properly inferred that Brennan, as agent for Miller, ordered from Hannah liability insurance, which order was filled by Hannah by mailing to Miller the Metropolitan policy, with an invoice for the premium for the first year.

As Metropolitan admits in its reply brief, "The pivotal factual issue of the entire controversy" was "Did Brennan give Hannah an order for a liability policy?" We agree that this was the pivotal factual issue but the jury decided this issue against Metropolitan. A careful consideration of the entire record convinces us that the instructions to the jury fairly presented the law of the case and that the verdict was sustained by the evidence.

The judgment of the District Court is affirmed.